1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER, | Case No. 1:21-cv-01488-JLT-BAK |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT OR ALTERNATIVELY GRANTING WITH REDUCTION IN ATTORNEYS' FEES |
| v. | |
| COOKE CITY RACEWAY, INC., | |
| Defendant. | |
| | ORDER REQUIRING SERVICE ON DEFENDANT WITHIN THREE DAYS |
| | (ECF Nos. 23, 25) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

## I.

## INTRODUCTION

Currently before the Court is Chris Langer's ("Plaintiff") motion for default judgment. Plaintiff seeks default judgment against Defendant Cooke City Raceway, Inc., a California Corporation doing business as Willow Springs International Raceway ("Defendant"). No opposition to the motion was filed and Defendant has not otherwise appeared in this action. On July 13, 2022, the Court held a hearing on the motion for default judgment, at which no appearances were made on behalf of Defendant. Having considered the moving papers, the declarations and exhibits attached thereto, the nonappearance of Defendant at the hearing, as well as the Court's file, the Court issues the following findings and recommendations

recommending denying Plaintiff's motion for default judgment, or alternatively, if the District Judge finds Plaintiff's complaint states a claim, granting the motion for default judgment subject to a reduction in the requested attorneys' fees.

**II.**

**BACKGROUND**

**A.    Procedural History**

On October 5, 2021, Plaintiff filed this action and summonses were issued.  (ECF Nos. 1, 2.)[1]  On December 6, 2021, the Court issued an order to show cause why sanctions should not issue for the failure to serve, or, alternatively to file proof of service of the summons.  (ECF No. 5.)   On December 8, 2021, Plaintiff filed an executed summons proffering service of the summons was completed on Defendant on November 12, 2021.  (ECF No. 6.)  On December 27, 2021, default was entered against Defendant.  (ECF Nos. 10, 11.)

On April 27, 2022, the Court issued an order to show cause on or before May 18, 2022, why sanctions should not issue for the failure to prosecute this action.  (ECF No. 19.)  On May 18, 2022, Plaintiff filed a response to the order to show cause, that was discharged on May 27, 2022.  (ECF Nos. 22, 27.)

On May 20, 2022, Plaintiff filed a motion for default judgment, and a separate proof of service.  (ECF Nos. 23, 24.)  On May 23, 2022, the motion for default judgment was refiled with a notice of correction of docket.  (ECF No. 25.)[2]

---

[1]  All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[2]  It is not precisely clear why the new document was filed, as counsel did not submit a written explanation, though the Court makes a few observations.  First, it appears the reason for the new filing is presumptively because California State Bar numbers were wrong in the initial filing  (Compare ECF No. 23 at 1 with ECF No. 25 at 1.)  Both filings were signed May 20, 2022, and the briefing appears identical except the exhibits attached are different.  However, the Court notes counsel may have mistakenly omitted attachments from the new filing.  The initial filing included the attorney billing timesheets attached; however, the second filing did not have such exhibit attached to the declaration of counsel Russel Handy.  (Compare ECF No. 23-4 at 1-4 with ECF Nos. 25-2 at 25-3.)  The original filing attached the declaration of Plaintiff Chris Langer.  (ECF No. 23-5 at 2-3.)  The new filing does not contain this declaration.  The initial filing included a proposed order, and the new filing does not.  (ECF No. 23-7 at 1.)  A proof of service of the initial filing on Defendant was filed separately, and noted the notice of motion, briefing, exhibit list, exhibits 1-3, and the proposed order, were served.  (ECF No. 24-1.)  The second filed motion attaches a proof of service that indicates only that the notice of motion, the briefing, and exhibits 1 and 3 were served.  (ECF No. 25-4.)  There does not appear to be other substantive differences between the briefing, and the Court considers the filings collectively if necessary (such as where the timesheet was not included in the second filing), as both were served on

1    On May 24, 2022, the Court continued the hearing in this matter, until July 6, 2022.

2    (ECF No. 26.)  On July 1, 2022, the Court continued the hearing in this matter until July 13,

3    2022.  (ECF No. 28.)  On July 7, 2022, Plaintiff filed proof that the notice of continued hearing

4    date and meeting ID and password to attend the hearing via videoconference were served on

5    Defendant.  (ECF No. 29.)

6    On July 13, 2022, the Court held a hearing via videoconference.  Counsel Candice

7    Clipner appeared via video on behalf of Plaintiff.  Nobody appeared on behalf of Defendant via

8    videoconference, nor the public access telephone line.  Defendant subsequently made no filing in

9    this action.

10    **B.    Plaintiff's Allegations in the Operative Complaint**

11    Plaintiff brings this action against Defendants alleging violation of the Americans with

12    Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, (the "ADA"); California's Unruh Civil

13    Rights Act, California Civil Code § 51, *et seq.* (the "Unruh Act"); and California Health and

14    Safety Code §§ 4450, 19955(a), 19959.  (Compl., ECF No. 1; Pl.'s Mem. P. & A. Supp. Mot.

15    Default J. ("Mem.") at 2, ECF Nos. 23-1, 25-1.)  Plaintiff alleges that he is a disabled individual;

16    hard of hearing; a member of a protected class under the ADA; and relies on subtitles and closed

17    captioning to hear audio in recorded content.  (Compl. ¶¶ 1, 10-11; Mem. 2; Decl. Chris Langer

18    Supp. Mot. Default J. ("Langer Decl.") ¶ 2, ECF No. 23-5.)

19    Plaintiff alleges that Defendant owned or operated Willow Springs International Raceway

20    located in Kern; owned or operated Willow Springs International Raceway website, with a root

21    domain of: http://www.willowspringsraceway.com/and all related domains, sub-domains and/or

22    content contained within it, (the "Website") in August 2021, and owned or operated the Website

23    as of the time of filing of the complaint on October 5, 2021.  (Compl. ¶¶ 3-4.)

24    Plaintiff alleges Defendant operates privileges or services out of a physical location in

25    California; these services are open to the public, are places of public accommodation, and

26

27    Defendant within the notice period, and Defendant was additionally served with a notice of the continued hearing

28    date and videoconference login information prior to the hearing, and Defendant has made no filing nor appeared in
      this action.  (ECF No. 29.)

business establishments; that the Website is a nexus between Defendant's customers, and the "terrestrial based privileges or services" offered by Defendant; that Defendant offers it videos on its website to induce customers to avail of its services; and that the Website and its videos are some of the facilities, privileges, or advantages offered by Defendants to patrons of Defendant. (Compl. 12-14.)   Plaintiff alleges he was a prospective customer who wished to access Defendant's goods or services; that he visited the Website in August of 2021 to look for information about the Defendant's raceway and scope of its services and work; and that when Plaintiff attempted to view video content on the website, he discovered that the videos lacked closed captioning, which made him unable to fully understand and consume the contents of the videos.   (Compl. ¶¶ 15-17.)   Specifically, Plaintiff experienced difficulty and discomfort in attempting to view videos including: "Willow Springs Super Stock Main." (Compl. ¶ 18.)   As a result of this inaccessibility, Plaintiff was deterred from further use of the Website.  (Id.)

Plaintiff claims that currently, Defendant either fails to provide an accessible website or has failed to maintain in working and usable conditions those website features required to provide ready access to persons with disabilities.  (Compl. ¶ 19.)   Despite multiple attempts, Plaintiff was denied the full use and enjoyment of the facilities and services offered by Defendant as a result of the accessibility barriers.

Plaintiff states he is a "tester in this litigation and seeks future compliance with all federal and state laws [and] will return to the Website to avail himself of its services and to determine compliance with the disability access laws once it is represented to him that [Defendant] and Website are accessible." (Compl. ¶ 26.)   Plaintiff is currently deterred from doing so.  (Compl. ¶ 27.)

C.   **Relief Sought**

Plaintiff pleads for the following relief: (1) a declaratory judgment; (2) equitable nominal damages; (3) injunctive relief; (4) statutory minimum damages under the Unruh Act; and (5) attorneys' fees, expenses, and costs.  (Compl. at 8-9.)   In moving for default judgment, Plaintiff specifically seeks: (1) injunctive relief pursuant to 42 U.S.C. § 12181, enjoining Defendant from violating the ADA with respect to the Website, with a requirement that all current and future

audio-video content be closed captioned at the time of upload; (2) statutory damages in the amount of $4,000; and (3) attorneys' fees and costs in the amount of $4,282.00.  (ECF No. 25 at 1-2; Mem. 2.)

## III.

## LEGAL STANDARD FOR DEFAULT JUDGMENT

"Our starting point is the general rule that default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible."  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Pursuant to Federal Rules of Civil Procedure 55, obtaining a default judgment is a two-step process.  Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise.  Fed. R. Civ. P. 55(a).  After entry of default, a plaintiff can seek entry of default judgment.  Fed. R. Civ. P. 55(b).  Federal Rule of Civil Procedure 55(b)(2) provides the framework for the Court to enter a default judgment:

> (b) Entering a Default Judgment.
>
>> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>>
>>> (A) conduct an accounting;
>>>
>>> (B) determine the amount of damages;
>>>
>>> (C) establish the truth of any allegation by evidence; or
>>>
>>> (D) investigate any other matter.

Fed. R. Civ. P. 55.

The decision to grant a motion for entry of default judgment is within the discretion of the

court.  PepsiCo, Inc. v. California Security Cans, 238 F.Supp. 1172, 1174 (C.D. Cal. 2002).  The Ninth Circuit has set forth the following seven factors (the "Eitel factors") that the Court may consider in exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

Generally, once default has been entered, "the factual allegations of the complaint, except those relating to damages, will be taken as true."  Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012) (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977)); see also Fed. R. Civ. P. 8(b)(6) ("An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied.").  Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008).  Additionally, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992) (internal citation omitted).  The relief sought must not be different in kind or exceed the amount that is demanded in the pleadings.  Fed. R. Civ. P. 54(c).

**IV.**

**DISCUSSION**

The Court first determines whether the Court properly has jurisdiction in this matter, and then turns to the Eitel factors to determine whether default judgment should be entered.

**A.**   **Jurisdiction**

1.   Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress.  U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000).  Pursuant to 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.'  "A case 'arises under' federal law either

where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law." Republican Party of Guam v. Gutierrez, 277 F.3d 1086, 1088 (9th Cir. 2002) (internal punctuation omitted) (quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 8–9 (1983) (citations omitted)). "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Republican Party of Guam, 277 F.3d at 1089 (citations omitted).

Plaintiff brings this action alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. Therefore, the Court has original jurisdiction under 28 U.S.C. § 1331. In addition, the Court may appropriately exercise supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's related state law claims.

### 2.   The Court finds Service of Process on Defendant to be Adequate

As a general rule, the Court considers the adequacy of service of process before evaluating the merits of a motion for default judgment. See J & J Sports Prods., Inc. v. Singh, No. 1:13-CV-1453-LJO-BAM, 2014 WL 1665014, at *2 (E.D. Cal. Apr. 23, 2014); Penpower Tech. Ltd. v. S.P.C. Tech., 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008); Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) (stating that if party "failed to serve [defendant] in the earlier action, the default judgment is void and has no res judicata effect in this action.").

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." Direct Mail, 840 F.2d at 688 (quoting United Food & Commercial Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)). However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.' " Direct Mail, 840 F.2d at 688 (quoting Benny v. Pipes, 799 F.2d 489, 492 (9th Cir.1986)). "[A] signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." SEC v. Internet Solutions for Bus., Inc., 509 F.3d 1161, 1163 (9th Cir. 2007).

The proof of service indicates that Cooke City Raceway, Inc., a California Corporation dba Willow Springs International Raceway, was served by service on the agent for service of process Frank Fisher through substitute service on "Rick Romo-Manger," person apparently in charge of the office or usual place of business of Frank Fisher, who was informed of the general nature of the papers, at 2:14 p.m. on November 1, 2021.  (ECF No. 6 at 1.)  The documents were thereafter served by mail on November 2, 2021.  (Id.)  The documents proffer this was completed in compliance with California Code of Civil Procedure 415.20.  (Id.)

The Court notes that the Defendant has not updated their information with the California Secretary of State, and the information statement is noted as delinquent as of July 27, 2021.[3]  The latest statement of information was filed on August 19, 2020, and affirms that on such date, Frank Fisher was the agent for service of process at 3500 75th St. W, Rosamond California 93560, and that the Director for the corporation was Rick Romo, at the same address.  The filing confirms that the address is the same address as service was effectuated.

Under the federal rules, a corporation, partnership, or association may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."  Fed. R. Civ. P. 4(h)(1)(A).  Pursuant to Rule 4(e)(1), service can be effectuated by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).

In California, a corporation may be served by delivery to the person designated as an agent for service of process, or to the "president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process."  Cal. Civ. Proc. Code § 416.10(a)-(b).  In California, substitute service on the person to be served to effectuate service on a corporation may be made:

---

[3]  The Court has taken judicial notice of the records of the California Secretary of State as to Defendant.  Judicial notice may be taken "of court filings and other matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); see also L'Garde, Inc. v. Raytheon Space & Airborne Sys., 805 F. Supp. 2d 932, 938 (C.D. Cal. 2011) (taking judicial notice of records searches on the California Secretary of State corporate search website as the accuracy of such record searches "can be determined by readily accessible resources whose accuracy cannot reasonably be questioned.").

1    "by leaving a copy of the summons and complaint during usual office hours in his or her office

2    or, if no physical address is known, at his or her usual mailing address, other than a United

3    States Postal Service post office box, with the person who is apparently in charge thereof, and

4    by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid

5    to the person to be served at the place where a copy of the summons and complaint were left."

6    Cal. Civ. Proc. Code § 415.20(a).

7         The Court finds service to be adequate.  See Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A); Cal. Civ.

8    Proc. Code §§ 415.20(a), 416.10(a)-(b); Internet Solutions for Bus., 509 F.3d at 1163.

9         **B.    The Eitel Factors Weigh Against Granting Default Judgment**

10        The  Court  finds  that  consideration  of  the  Eitel  factors  weigh  against  granting  default

11   judgment, principally because the Court finds Plaintiff's complaint fails to state a claim under the

12   ADA.   Thus,  consideration  of  the  second  factor  regarding  the  merits  of  Plaintiff's  substantive

13   claims, and third factor regarding sufficiency of the complaint, weigh against default judgment.

14        1.    Prejudice to Plaintiff if Default Judgment is Not Granted

15        Plaintiff filed this action on October 5, 2021.  (ECF No. 1.)  Defendant was served on

16   November 12, 2021.  (ECF No. 6.)  If default judgment is not entered, Plaintiff, a disabled

17   individual, is effectively denied a remedy for the violations of the disability statutes as alleged,

18   until such time as the Defendant in this action decides to appear in the litigation, which may

19   never occur.  Defendant has not filed an answer, a motion to dismiss, or otherwise appeared in

20   the action.  Defendant did not make an appearance at the hearing held on July 13, 2022.

21        For these reasons, the Court finds Plaintiff would be substantially prejudiced if default

22   judgment is not granted and finds this Eitel factor weighs in favor of granting default judgment

23   in favor of Plaintiff.  See, e.g., Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1007 (C.D. Cal.

24   2014).

25        2.    The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint

26        The  second  and  third  Eitel  factors  instruct  the  Court  to  evaluate  the  merits  of  the

27   substantive claims alleged in the complaint as well as the sufficiency of the complaint itself.  It is

28   appropriate for the Court to analyze these two factors together.  AMUR Equip. Fin., Inc. v. CHD

9

1  Transp. Inc., No. 117CV00416AWISKO, 2017 WL 5477379, at *5 (E.D. Cal. Nov. 15, 2017);

2  F.D.I.C. v. Quest, F.S., Inc., No. SACV 10-00710 DOC, 2011 WL 2560428, at *2 (C.D. Cal. June

3  27, 2011).  In doing so, the Court looks to the complaint to determine if the allegations contained

4  within are sufficient to state a claim for the relief sought.  Danning v. Lavine, 572 F.2d 1386, 1388

5  (9th Cir. 1978).

6    **a.**  **Americans with Disabilities Act**

7    One of the purposes of the ADA is "to provide clear, strong, consistent, enforceable

8  standards addressing discrimination against individuals with disabilities."   42 U.S.C. §

9  12101(b)(2).  "Congress enacted the statute on the premise that discrimination against the disabled

10  is 'most often the product, not of invidious animus, but rather the thoughtlessness and

11  indifference—of benign neglect.' "  Cohen v. City of Culver City, 754 F.3d 690, 694 (9th Cir.

12  2014) (quoting Alexander v. Choate, 469 U.S. 287, 295 (1985)).  "Therefore, the ADA proscribes

13  not only 'obviously exclusionary conduct,' but also 'more subtle forms of discrimination—such as

14  difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals'

15  full and equal enjoyment' of public places and accommodations."  Cohen, 754 F.3d at 694

16  (quoting Chapman v. Pier 1 Imps. (U.S.) Inc., 631 F.3d 939, 945 (9th Cir.2011)).  "An ADA

17  plaintiff suffers a legally cognizable injury under the ADA if he is 'discriminated against on the

18  basis of disability in the full and equal enjoyment of the goods, services, [or] facilities . . . of any

19  place of public accommodation.' "  Chapman, 631 F.3d at 952 (quoting 42 U.S.C. § 12182(a))

20  (alteration in original).

21    "To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is

22  disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or

23  operates a place of public accommodation; and (3) the plaintiff was denied public accommodations

24  by the defendant because of her disability."  Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th

25  Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)).  Discrimination under the ADA is defined to include

26  "a failure to take such steps as may be necessary to ensure that no individual with a disability is

27  excluded, denied services, segregated or otherwise treated differently than other individuals

28  because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking

1  such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage,

2  or accommodation being offered or would result in an undue burden."   42 U.S.C. §§

3  12182(b)(2)(A)(iii).

4          i.    Plaintiff has Established he is Disabled under the ADA

5        The ADA defines disability as "a physical or mental impairment that substantially limits

6  one or more major life activities."  42 U.S.C. § 12102(1)(A).  Major life activities include walking,

7  standing, and hearing.  42 U.S.C. § 12102(2)(A).  Plaintiff alleges that he is profoundly hard of

8  hearing and needs closed captioning to consume audio content such as movies, videos, or tutorials.

9  (Compl. ¶ 1.)  Plaintiff also submitted a declaration attesting to his disability.  . (Langer Decl ¶ 2.)

10        Taking the allegations in the complaint as true for purposes of default judgment, and

11  considering the supporting declaration, Plaintiff has adequately established this element of his

12  ADA discrimination claim.

13          ii.    Defendant Owns, Operates, or Leases a Public Accommodation

14        Plaintiff proffers the Defendant Cooke City Raceway, Inc., owned or operated Willow

15  Springs International Raceway located in Kern County in August 2021 and currently.  (Compl. ¶¶

16  1-2.)  Plaintiff also alleged that Defendant owned the Willow Springs International Raceway

17  website, with a root domain of: http://www.willowspringsraceway.com, in August 2021 and

18  currently.  (Compl. ¶ 4-5; Mem. 6; Decl. Candice Clipner Supp. Mot. Def. J. ("Clipner Decl."),

19  ECF Nos. 25-3 at 2-4, 23-6 at 2-4.)[4]

20        The ADA provides that a "park, zoo, amusement park, or other place[s] of recreation," and

21  a "bowling alley, golf course, or other place[s] of exercise or recreation," are considered public

22  accommodations.  42 U.S.C. § 12181(7)(I)-(L).  Websites are not specifically mentioned in the

23  ADA statute as places of public accommodation.  Nonetheless, Plaintiff emphasizes the U.S.

24  Department of Justice Civil Rights Division has consistently taken the position that the ADA's

25  requirements apply to all goods, services, privileges, or activities offered by public

26

27  _____

  [4]  While the memorandum directs the Court to Ms. Clipner's declaration for support for this proposition, the
28  declaration only states that Defendant is a legal entity and not an infant or incompetent, and identifies the agent for
service of process.  (Clipner Decl. ¶¶ 2-3.)

accommodations, including those offered on the internet, and the Ninth Circuit has recently upheld the broad application of the ADA's guarantee of equal access, and its applicability to websites. See Robles v. Domino's Pizza, LLC, 913 F.3d 898, 906–07 (9th Cir. 2019) (hereinafter "Robles"); *Guidance on Web Accessibility and the ADA*, U.S. Department of Justice Civil Rights Division, available at https://beta.ada.gov/resources/web-guidance/ (last accessed July 22, 2022). Plaintiff also submits he may seek enforcement of the privately created WCAG guidelines as a remedy. Robles, 913 F.3d at 907.

The Court finds the racetrack park qualifies as an amusement park or other place of recreation. 42 U.S.C. § 12181(7)(I)-(L). However, websites, standing alone, are not places of public accommodation. See Langer v. Pep Boys Manny Moe & Jack of California, No. 20-CV-06015-DMR, 2021 WL 148237, at *5 (N.D. Cal. Jan. 15, 2021) (citing Cullen v. Netflix, Inc., 880 F. Supp. 2d 1017, 1024 (N.D. Cal. 2012); Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000); Brooks v. See's Candies, Inc., No. 2:20-CV-01236-MCE-DB, 2021 WL 3602153, at *3 (E.D. Cal. Aug. 13, 2021).

      iii.   The Court Finds Plaintiff has not Plausibly Alleged Defendant Owns, Operates, or Leases a Public Accommodation that Denied Plaintiff Public Accommodations Due to his Disability

Under Robles, even if websites are not "public accommodations" under the ADA, a denial of equal access to a website can state a claim if the denial has prevented or impeded a disabled plaintiff from equal access to, or enjoyment of, the goods and services offered at the defendant's physical facilities. Brooks, 2021 WL 3602153, at *3; Robles, 913 F.3d at 905–07 ("online offerings must effectively communicate with its disabled customers and facility 'full and equal enjoyment' of [the public accommodation's] goods and services."); Langer v. Pep Boys, 2021 WL 148237, at *5 (Robles "explains that websites and applications are covered by the ADA to the extent that there is a 'nexus' between the website and the physical location."); Farr v. Hobby Lobby Stores, Inc., No. CV 19-5949-DMG (ASX), 2020 WL 3978078, at *2 (C.D. Cal. Apr. 29, 2020) ("[S]o long as there is a 'nexus' between a defendant's physical locations and its website or mobile app, web-based discriminatory barriers that impede access to goods and services can give rise to an injury under the ADA."). The Ninth Circuit expressly declined to "decide whether the

1   ADA covers the websites or apps of a physical place of public accommodation where their

2   inaccessibility does not impede access to the goods and services of a physical location."  Robles,

3   913 F.3d at 905 n.6; see also Brooks, 2021 WL 3602153, at *3 n.3.

4           In Robles, the website violated the ADA by not providing auxiliary aids and services for

5   effective communication and full and equal enjoyment of its products and services.  The Ninth

6   Circuit found the "nexus" that "[c]ustomers use the website and app to locate a nearby Domino's

7   restaurant and order pizzas for at-home delivery or in-store pickup," "critical."  Robles, 913 F.3d at

8   905.  Considering the "website and app facilitate access to the goods and services of a place of

9   public accommodation—Domino's physical restaurant[;]" and the website and app "are two of the

10  primary (and heavily advertised) means of ordering Domino's products to be picked up at or

11  delivered from Domino's restaurants;" the Ninth Circuit held "the ADA applies to Domino's

12  website and app, which connect customers to the goods and services of Domino's physical

13  restaurants."  Id. at 905-906.

14          In Farr, the court denied a motion to dismiss finding a sufficient nexus where the plaintiff

15  "ha[d] not simply concluded that he was deterred from visiting Hobby Lobby [but] alleged that he

16  tried to use Defendant's website to purchase products and locate a store, could not use Defendant's

17  website because of its inaccessibility to visually impaired individuals, and was thereby deterred

18  from accessing Defendant's goods and services."  Farr, 2020 WL 3978078, at *4.

19          In Brooks, the court granted a motion to dismiss, finding Brooks had failed to identify any

20  such nexus as in other website ADA cases: "Plaintiff here does not allege she tried to order candy

21  from the website for pickup at a See's shop but was unable to do so[;] [n]or does she identify any

22  comparable integration between the See's website and its physical stores comparable to that

23  encountered in Robles [and [i]nstead, she identifies only a store locator that, by all indications,

24  would have no functional difference from the results obtained by a simple Google search for See's

25  shops on any internet browser."  Brooks, 2021 WL 3602153, at *3 ("She identifies none of the

26  interconnectedness present in Robles between the See's website and the actual place of public

27  accommodation that would make the website deserving on ADA protection.").

28          In Langer v. Pep Boys, an action involving the same plaintiff as here, the court granted a

13

motion to dismiss.  There, Langer had alleged he visited the website to confirm the business was open and to look for information about the company and its products; alleged he was denied the full use and enjoyment of the facilities, goods and services offered; had been deterred from returning to the website; but averred he would return to the website to avail himself of its goods and/or services once it had been made accessible.  <u>Langer v. Pep Boys</u>, 2021 WL 148237, at *6.  The court found Langer had not explained how the alleged violations had a nexus to Pep Boys' physical locations; he did not for example, allege that he intended to visit a Pep Boys' location and could not because the website was inaccessible; did not represent that he was trying to use the website to order goods or services from a Pep Boys' physical location; and "[i]nstead, he merely suggests that the websites videos are themselves a service that he was prevented from accessing."  <u>Id.</u>  The court held the caselaw "makes clear that websites (and the services offered on them) are not public accommodations absent a nexus to a physical location [and] [t]herefore, without more, Langer's allegations that he had difficulty watching a video on Pep Boys' website is not sufficient to allege injury under the ADA."  <u>Id.</u>  The court granted leave to amend to "add allegations that he attempted to access services connected with a physical Pep Boys location and could not."  <u>Id.</u>

Against that backdrop of cases where district courts considered whether plaintiffs had sufficiently alleged a nexus under <u>Robles</u>, the Court turns to the specific allegations in the operative complaint here.  Plaintiff generally alleges the: "Website is a nexus between Cooke City Raceway, Inc. customers, and the terrestrial based privileges or services offered by Cooke City Raceway, Inc." (Compl. ¶ 13.)  The Court finds this standing alone is essentially only a legal conclusion.  In briefing, Plaintiff cites to <u>Robles</u> but does not mention the word "nexus" or discuss that critical factor of the analysis in <u>Robles</u> or how Plaintiff has alleged facts showing such required nexus here.

Plaintiff alleges "Cooke City Raceway, Inc. offers videos on its website to induce customers to avail its services," and "[w]ebsites and videos are some of the facilities, privileges, or advantages offered by Defendants to patrons of Cooke City Raceway, Inc."  (Compl. ¶ 14.)  This essentially equates to an allegation that Plaintiff was unable to view a video advertisement, and a conclusion that the website and videos are the goods or services offered by the public

1    accommodation, similar to Langer's allegations against Pep Boys.  See Langer v. Pep Boys, 2021

2    WL 148237, at *6.

3           "Plaintiff was a prospective customer who wished to access Defendant's goods or

4    services." (Compl. ¶ 15.)  "Plaintiff visited the Website in August 2021 to look for information

5    about the Raceway and the scope of its services and work." (Compl. ¶ 16.)  "When Plaintiff

6    attempted to view the video content on the Website, he discovered that the videos lacked closed

7    captioning, which made him unable to fully understand and consume the contents of the videos."

8    (Compl. ¶ 17.)  "Plaintiff experienced difficulty and discomfort in attempting to view videos

9    including: 'Willow Springs Super Stock Main[.]'  As a result of this inaccessibility, he was

10   deterred from further use of the Website." (Compl. ¶ 18.)  Plaintiff alleges "[b]y failing to provide

11   an accessible website, the Defendants denied Plaintiff full and equal access to the facilities,

12   privileges or advantages offered to their customers." (Compl. ¶ 22.)  In these paragraphs, Plaintiff

13   is again essentially only alleging he was deterred from use of the Website.  While he avers that he

14   visited the Website to look for information about the scope of services and work, he does not

15   allege what information he was not able to obtain that impeded his ability to *access* the physical

16   goods and services at the public accommodation.  Compare Brooks, 2021 WL 3602153, at *3, and

17   Langer v. Pep Boys, 2021 WL 148237, at *6, with Robles, 913 F.3d at 905, Farr, 2020 WL

18   3978078, at *4.

19          Plaintiff further alleges he "is a tester in this litigation and seeks future compliance with all

20   federal and state laws," and that he "will return to the Website to avail himself of its services and

21   to determine compliance with the disability access laws once it is represented to him that Cooke

22   City Raceway, Inc. and Website are accessible." (Compl. ¶ 26.)  Thus, Plaintiff states he plans on

23   returning to the Website to avail himself of the *Website's* services, however, he never alleges he

24   wishes to avail himself of the goods and services at the physical location, nor critically how he was

25   unable to access the goods and services through some feature of the website, *i.e.*, the nexus

26   between the Website and the public accommodation.  See Gomez v. Corro, No. 21-CV-07085-SI,

27   2022 WL 1225258, at *2 (N.D. Cal. Apr. 26, 2022) ("Here, Gomez asserts that the information

28   about real estate listings on Corro Ramirez's website is itself the service, rather than the website

facilitating access to the services offered by a Corro Ramirez physical location.").[5]

Plaintiff does not allege the information he was seeking about the scope and work of the public accommodation was not available elsewhere on the Website, or *was* present in the inaccessible videos.  Plaintiff does not allege a video walked customers through the process of registering for the races; that the video was an instructional or tutorial that would allow him to prepare for the race; or some other nexus between the Website and the goods and services of the public accommodation.  See Robles, 913 F.3d at 905 ("Domino's website and app facilitate access to the goods and services of a place of public accommodation—Domino's physical restaurants . . . [c]ustomers use the website and app to locate a nearby Domino's restaurant and order pizzas for at-home delivery or in-store pickup.").  The complaint does not allege how the website's videos facilitate access to the goods and services of the place of public accommodation, other than as an inducement or advertisement.  See Gomez, 2022 WL 1225258, at *2 ("Thus, Gomez's claim is unlike the claim in *Robles* where the inaccessible website impeded access to ordering a customized pizza, or an inaccessible website preventing access to a registration form for a veterans' service organization . . . Gomez does not cite any authority within the Ninth Circuit holding that a plaintiff may bring a Title III ADA claim to challenge the inaccessibility of a website where the inability to access information on the website was the sole basis of the ADA claim – where the website information was the 'service' – and the website's inaccessibility did not separately impede access to the goods or services of the public accommodation.").

Plaintiff has not alleged that the inaccessible video(s) separately impeded access to the goods and services of the public accommodation, aside from averring there was a goal to obtain information.  C.f. Rosales v. Indivest, Inc., No. 221CV02195ABPVCX, 2022 WL 2199096, at *1, 5 (C.D. Cal. Mar. 4, 2022) ("[W]ebsite allows consumers to access the 'goods and services which Defendant offers in connection with its physical location,' the Plaza La Reina Hotel, including, room reservations, weekend specials, and spaces for events . . . allows consumers to . . . find the hotel location, and contact information . . . [and] [b]ecause Plaintiff has been unable to find the

---

[5]  The Court recognizes that in Gomez, the plaintiff "disclaimed any intention to visit Corro Ramirez physical office."  Id.  The court there denied leave to amend.

location and hours of operation of the hotel, which are located on the website, Plaintiff has been prevented" from visiting and deterred from visiting until compliant).  Plaintiff does not allege facts that he was unable to access information necessary for his inquiry about the scope of the raceway's services and work elsewhere on the website, for example, locations, hours, specials, coupons, special events, rules for the raceway, types of races, minimum age, height, weight, or other standards such as visual or hearing ability requirements – or other information that would help facilitate access to the actual physical public accommodation.  Id.  Plaintiff has not shown he was prevented or impeded: from access to the goods and services at the physical location.  See Brooks, 2021 WL 3602153, at *3 ("[A denial of equal access to a website can nonetheless support an ADA claim if the denial has prevented or impeded a disabled plaintiff from equal access to, or enjoyment of, the goods and services offered at the defendant's physical facilities . . . [and plaintiff] identifies none of the interconnectedness present in Robles between the See's website and the actual place of public accommodation.").

For all of these reasons, the Court finds Plaintiff has not plausibly alleged that Defendant denied Plaintiff public accommodations due to his disability, and recommends the motion for default judgment be denied on such ground.  See Robles, 913 F.3d at 905; Brooks, 2021 WL 3602153, at *3; Gomez, 2022 WL 1225258, at *2; Rosales, 2022 WL 2199096, at *1, 5; Langer v. Pep Boys, 2021 WL 148237, at *6; see also Erasmus v. Ryan A. Dunlop, D.M.D., Inc., No. 121CV01236AWISAB, 2022 WL 2805961, at *6 (E.D. Cal. July 18, 2022) ("Applying the majority approach in this case, the Court finds that the Complaint does not sufficiently state an ADA claim because it does not allege that web-based barriers impeded Plaintiff from accessing or ordering goods or services from Defendant's office.").

Nonetheless, recognizing the District Judge may come to a different conclusion given the standards for default judgment, or in consideration of potentially forthcoming objections, the Court shall proceed to analyze the next factors, and also provide a recommendation on the award of attorneys' fees and costs, in the case the District Judge is inclined to find Plaintiff did plausibly allege the denial of public accommodations due to his disability.

/ / /

    iv.    <u>The Court Finds Plaintiff has Plausibly Alleged Defendant can Remedy the Website without Undue Burden or Fundamental Alteration</u>

Plaintiff alleges the "barriers identified above violate easily accessible, well-established industry standard guidelines for making digital content accessible to people with hearing-impairments to access websites," and that "[g]iven the prevalence of websites that have implemented these standards and created accessible digital content, it is readily achievable to construct an accessible website without undue burden on Cooke City Raceway, Inc. or a fundamental alteration of the purpose of the Website." (Compl. ¶ 28.) Plaintiff specifically alleges "[c]ompliance with W3C Web Content Accessibility Guidelines ("WCAG") 2.0 AA standards is a viable remedy for these deficiencies and a standard that has been adopted by California courts for website accessibility." (Compl. ¶ 29.)

The Court finds that Plaintiff has plausibly alleged that compliance with WCAG is a viable remedy that would not impose an undue burden or fundamental alteration to the goods and services provided by Defendant. 42 U.S.C. § 12182(b)(2)(A)(iii); <u>Robles</u>, 913 F.3d at 903 n.1 ("WCAG 2.0 guidelines are private industry standards for website accessibility developed by technology and accessibility experts . . . have been widely adopted, including by federal agencies, which conform their public-facing, electronic content to WCAG 2.0 level A and level AA Success Criteria . . . the Department of Transportation requires airline websites to adopt these accessibility standards . . . [and] [n]otably, the Department of Justice has required ADA-covered entities to comply with WCAG 2.0 level AA (which incorporates level A) in many consent decrees and settlement agreements in which the United States has been a party."); <u>Rosales</u>, 2022 WL 2199096, at *4 (applying readily achievable standard and Lopez burden shifting to find Rosales "satisfied her burden of showing that altering the website is readily achievable as required under *Lopez* by alleging "the revenue generated through the website is 'far greater than the associated cost of making Defendant's website equally accessible' [and] [p]laintiff asserts that the website can be readily accessible by complying with the WCAG 2.1 guidelines, which can be achieved by retaining a qualified consultant."); <u>Erasmus v. Charles W. Perry, M.D., Inc.</u>, No. 221CV00915WBSKJN, 2021 WL 4429462, at *6 (E.D. Cal. Sept. 27, 2021) ("[D]efendant does not

contend that taking steps to render the videos on its website accessible to plaintiff and other hearing-impaired individuals by providing closed captioning would fundamentally alter the nature of the goods, services, or privileges being offered or 'result in an undue burden . . .  as plaintiff plausibly alleges in her complaint, [c]losed captioning can be provided at little cost, sometimes free or mere dollars per minute of video content . . . [t]aking these facts as true . . . and construing permissible inferences in plaintiff's favor, neither the fundamental-alteration or undue-burden exceptions to Title III provide a basis for granting defendant's motion."); but see Downing, 2022 WL 1518252, at *2 ("Here, plaintiff's allegations are insufficient to show that providing auxiliary aids – i.e., making its website compatible with screen-reading software – would not result in an undue burden.").[6]

---

[6]  As noted above, discrimination under the ADA is defined to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."  42 U.S.C. § 12182(b)(2)(A)(iii). Subsection (iii) is the portion of the law that the Robles court considered applicable to the Domino's website.  See Robles, 913 F.3d at 906.  Thus the Court finds it appropriate to consider whether Plaintiff has plausibly alleged such steps would not fundamentally alter the nature of the good or result in an undue burden.  Id.; Downing, 2022 WL 1518252, at *2 ("As applied to 42 U.S.C. § 12182(b)(2)(A)(iii), an ADA plaintiff bears the initial burden to plausibly show how the cost of providing auxiliary aids and services will not result in significant difficulty or expense.").

The Court notes that the Rosales court applied the "readily achievable" language from 42 U.S.C. § 12182(b)(2)(A)(iv).  Rosales, 2022 WL 2199096, at *4.  Subsection (iv) is the portion of the law typically applied to physical architectural barriers, and more commonly analyzed by this Court under the "readily achievable" standard. See 42 U.S.C. § 12182(b)(2)(A)(iv) ("[F]ailure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable."); see also, e.g., Gilbert v. HBA Enterprises, Inc., No. 121CV01358JLTSAB, 2022 WL 2663761, at *12 (E.D. Cal. July 11, 2022); Trujillo v. Taco Riendo, Inc., No. 121CV01446JLTSAB, 2022 WL 2236932, at *11 (E.D. Cal. June 22, 2022).

The Downing court and the Rosales court also applied the burden shifting framework from Lopez.  See Lopez v. Catalina Channel Express, Inc., 974 F.3d 1030, 1038 (9th Cir. 2020); Downing, 2022 WL 1518252, at *2 (noting Lopez had stated applying a burden-shifting framework in this context is consistent with our application of burden-shifting frameworks to other similarly worded subsections of Title III); Rosales, 2022 WL 2199096, at *4.  Before the Ninth Circuit addressed whether the plaintiff or defendant carries the burden of proving that removal of an architectural barrier is readily achievable, the majority of district courts in the circuit applied the Tenth Circuit's burden-shifting framework.  See Moore v. Robinson Oil Corp., 588 F. App'x 528, 530 (9th Cir. 2014).  At the default judgment stage, district courts routinely found defaulting defendants had failed to plead the affirmative defense that removal of the barrier is not readily achievable, and thus considered the defense waived for purposes of default judgment.  See Moore, 588 F. App'x at 530; Vogel, 992 F. Supp. 2d at 1010; Ngoc Lam Che v. Boatman-Jacklin, Inc., No. 18-CV-02060-NC, 2019 WL 3767451, at *2 (N.D. Cal. Aug. 9, 2019).

In Lopez, the Ninth Circuit adopted a somewhat more lenient standard from the Second Circuit, for courts to apply at the summary judgment stage.  Lopez, 974 F.3d at 1038.  Magistrate Judge Kendall J. Newman recently issued findings and recommendations that thoroughly discussed the Lopez burden shifting in the context of a motion for

Accordingly, for purposes of default judgment, the Court accepts Plaintiff's allegations as true and finds Plaintiff has plausibly alleged that the WCAG remedy would not impose an undue burden or fundamental alteration to the goods and services provided by Defendant.  Therefore, if the District Judge declines to adopt the findings in the previous subsection, and does find Plaintiff sufficiently pled a nexus and Defendant denied Plaintiff public accommodations due to his disability, the Court would then recommend granting the motion for default judgment as the Court does find Plaintiff did sufficiently allege this element of the ADA claim.

### b.   California State Law Claims

Plaintiff also brings a state law claim for violation of the California's Unruh Civil Rights Act.  (Compl. ¶¶ 43-47.)  The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(a).  Unlike the ADA, the Unruh Act permits the recovery of monetary damages, in the form of actual and treble damages, at a statutory minimum of at least $4,000.00 per violation.  Cal. Civ. Code § 52(a); Molski v. M.J. Cable, Inc., 481 F.3d at 731; Vogel, 992 F. Supp. 2d at 1011.  After passage of the ADA in 1990, the Unruh Civil Rights Act was amended to provide that a violation of the ADA constitutes a violation of the Unruh Civil Rights Act.  Pickern v. Best W. Timber Cove Lodge Marina Resort, 194 F. Supp. 2d 1128, 1131

---

default judgment.  Whitaker v. Sheikh, No. 221CV0493KJMKJNPS, 2022 WL 1262023, at *3 (E.D. Cal. Apr. 28, 2022) ("Because Lopez was an appeal from summary judgment for the defendant, the Ninth Circuit had no occasion to address the pleading requirements for plaintiff to state a claim of barrier-related discrimination.").  This Court has recently recommended to this District Judge in other actions to adopt the reasoning explained by Magistrate Judge Newman as to the burden shifting relating to architectural barriers at the default judgment stage.  See Gilbert, 2022 WL 2663761, at *12; Trujillo, 2022 WL 2236932, at *11.

The Court would similarly recommend applying the reasoning of Whittaker, which was applied to 42 U.S.C. § 12182(b)(2)(A)(iv)'s readily achievable framework, to 42 U.S.C. § 12182(b)(2)(A)(iii)'s fundamental alteration and undue burden framework.  Thus, Plaintiff would have to plausibly allege remedial steps would not fundamentally alter the goods or services, or cause an undue burden to the defendant, instead of employing a failure to plead an affirmative defense burden shifting framework at the default judgment stage.  See Gilbert, 2022 WL 2663761, at *12; Trujillo, 2022 WL 2236932, at *11.  Regardless, the Court would find finds these slightly differing standards between the subsections of 12182(b)(2)(A), such as readily achievable and undue burden, and the differing application of the burden shifting affirmative defense framework and the plausible allegation framework not determinative.  The Court would find Plaintiff's allegations sufficient in either regard.  However, to be clear, the Court finds 42 U.S.C. § 12182(b)(2)(A)(iii) provides the correct standard, and recommends not applying the burden-shifting framework at the default judgment stage.

1  (E.D. Cal. 2002); Cal. Civ. Code § 54.1(d) ("A violation of the right of an individual under the

2  Americans with Disabilities Act of 1990 . . . also constitutes a violation of this section.").

3       If Plaintiff has stated a cause of action entitling him to relief under the ADA, then Plaintiff

4  has also stated a claim entitling him to relief under the Unruh Act.  See Vogel, 992 F. Supp. 2d at

5  1011-12; Villegas v. Beverly Corner, LLC, No. 216CV07651CASSSX, 2017 WL 3605345, at *5

6  (C.D. Cal. Aug. 18, 2017); Johnson v. Singh, No. 2:10-CV-2547 KJM JFM, 2011 WL 2709365, at

7  *1–4 (E.D. Cal. July 11, 2011).

8       If the District Judge finds Plaintiff has stated a claim under the ADA, then the Court may

9  appropriately also find Plaintiff stated a claim under the Unruh Act.   However, the Court

10  recommends the District Judge decline to find Plaintiff stated a sufficient claim as explained

11  above.  Accordingly, for the above stated reasons, the Court finds the second and third Eitel factors

12  weigh against granting default judgment in favor of Plaintiff on the ADA claim and the Unruh

13  Civil Rights Act claim.

14       3.      The Sum of Money at Stake in the Action

15       Default judgment is disfavored where large amounts of money are involved, or the award

16  would be unreasonable in light of the defendant's actions.  G & G Closed Circuit Events, LLC v.

17  Nguyen, No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012); PepsiCo,

18  Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) ("Under the third Eitel

19  factor, the court must consider the amount of money at stake in relation to the seriousness of

20  Defendant's conduct.").  In addition to injunctive relief, Plaintiff is seeking statutory damages in

21  the amount of $4,000.00, and attorneys' fees and costs in the amount of $4,282.00, for a total

22  award of $8,282.00.  This is not an excessive amount of money, nor does it seem unreasonable in

23  light of the allegations contained in the complaint.  See Vogel, 992 F. Supp. 2d at 1012 (citing

24  Moore v. Cisneros, No. 1:12–cv–00188 LJO SKO, 2012 WL 6523017, *4 (E.D. Cal. Dec. 13,

25  2012) (noting an award of $10,119.70 on default judgment in ADA discrimination case was "not

26  a relatively large sum of money, nor d[id] it appear unreasonable")); Johnson v. Huynh, No. CIV

27  S–08–1189 JAM DAD, 2009 WL 2777021, *2 (E.D. Cal. Aug. 27, 2009) (holding injunctive

28  relief and an award of $12,000.00 for ADA violations on default judgment was "relatively small

1   award of damages").

2   Further, the Court recommends any awarded attorneys' fees should be reduced, as

3   discussed below.  For these reasons, the Court finds this Eitel factor would weigh in favor of

4   granting default judgment in favor of Plaintiff against Defendant, if the District Court finds

5   Plaintiff stated a claim.

6   4.      The Possibility of a Dispute Concerning Material Facts

7   The next Eitel factor considers the possibility of dispute concerning material facts.  As

8   discussed above, the Court finds Plaintiff has not sufficiently alleged disability discrimination

9   under the ADA.  Nonetheless, if the District Judge finds Plaintiff has stated a claim based on the

10  allegations as pled, the Court finds this factor could weigh in favor of entering default judgment as

11  there is no possibility of dispute regarding the material facts due to the factual allegations in the

12  complaint being taken as true upon Defendant's default.  See Garamendi, 683 F.3d at 1080;

13  PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Upon entry

14  of default, all well-pleaded facts in the complaint are taken as true, except those relating to

15  damages.").

16  Accordingly, the Court finds consideration of this Eitel factor weighs against entry of

17  default judgment based on the Court's recommendation, however, would weigh in favor of

18  granting default judgment if  the District Court finds Plaintiff has stated a claim under the ADA.

19  5.      Whether the Default Was Due to Excusable Neglect

20  Defendant has failed to file a responsive pleading or otherwise appear in this action.  In

21  addition to the summons and complaint, Plaintiff also served the requests for entry of default as

22  well as the motion for default judgment on Defendants.  (ECF Nos. 6, 10-2, 24, 25-4, 29.)

23  Defendant did not file any opposition to the motion for default judgment and did not make an

24  appearance at the hearing on the motion for default judgment, despite being served with the video.

25  Given these facts, there is no indication or evidence that the failure to respond was due to

26  excusable neglect.  See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005

27  (N.D. Cal. 2001) ("The default of defendant . . . cannot be attributed to excusable neglect.  All

28  were properly served with the Complaint, the notice of entry of default, as well as the papers in

1  support of the instant motion.").

2  Accordingly, the Court finds this <u>Eitel</u> factor weighs in favor of granting default judgment.

3  6.  The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

4

5  Default judgments are disfavored because "[c]ases should be decided on their merits

6  whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1472.  However, the policy favoring decisions

7  on the merits does not weigh against entering default judgment where, as here, the Defendants'

8  failure to appear has made a decision on the merits impossible at this juncture.  Given the

9  prejudice to Plaintiff if default judgment is not granted as discussed above, and the merits of the

10  allegations contained in complaint, granting default judgment in this case would not violate the

11  general policy under the Federal Rules of Civil Procedure favoring decisions on the merits.  <u>See</u>

12  <u>PepsiCo</u>, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a

13  decision on the merits impractical, if not impossible.  Under Fed. R. Civ. P. 55(a), termination of

14  a case before hearing the merits is allowed whenever a defendant fails to defend an action.").

15  Accordingly, the Court finds the policy favoring decisions on the merits weighs against

16  granting default judgment given the Court's findings of a failure to state a claim, however, this

17  general policy does not preclude entering default judgment against Defendant under these

18  circumstances if the District Judge finds Plaintiff has stated a claim.

19  7.  The Eitel Factors Weigh Against Granting Default Judgment

20  Based on the foregoing, the Court finds that the <u>Eitel</u> factors weigh against granting

21  default judgment and recommends that Plaintiff's motion for default judgment be denied with

22  leave to file an amended complaint.  However, if the District Judge is inclined to find Plaintiff

23  has stated a claim, the Court would find the factors weigh in favor of granting default judgment.

24  The Court now turns to the types of relief requested by Plaintiff in the event the District Judge

25  finds default judgment should be granted.

26  **C.  Relief Requested**

27  In addition to injunctive relief, Plaintiff is seeking statutory damages in the amount of

28  $4,000.00, attorneys' fees in the amount of $3730.00, and costs of $552.00, for a total award of

$8,282.00.  (Mem. 2; ECF No. 23-7 at 2.)  If the District Judge grants default judgment, the Court recommends reducing the award of attorneys' fees for the reasons discussed below.

### 1.   Injunctive Relief

Plaintiff seeks an injunction compelling Defendant to comply with the ADA by requiring all current and future audio-video content be closed captioned at the time of upload.  (Mem. 2; ECF No. 23-7 at 2; Compl. at p. 8.)  The ADA provides that "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [and] [w]here appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter."  42 U.S.C. § 12188(a)(2).  A court may grant injunctive relief for violations of the Unruh Act under § 52.1(h).  Vogel, 992 F. Supp. 2d at 1015; Cal. Civ. Code § 52.1 ("An action brought pursuant to this section is independent of any other action, remedy, or procedure that may be available to an aggrieved individual under any other provision of law.").

Pursuant to federal and California law, Plaintiff is entitled to an injunction requiring such auxiliary aid or service.  Therefore, if the District Judge grants default judgment, an injunction should issue requiring Defendant to comply with the ADA by requiring all current and future audio-video content be closed captioned at the time of upload.

### 2.   Statutory Damages

Plaintiff seeks statutory damages in the amount of $4,000.00 as authorized by the California Unruh Civil Rights Act.  The Unruh Act provides for minimum statutory damages of $4,000.00 for each violation.  Cal. Civ. Code § 52(a).  Under the Unruh Act, statutory damages may be recovered if a violation of one or more construction related accessibility standards denied the plaintiff full and equal access to the place of public accommodation on a particular occasion.  Cal. Civ. Code § 55.56(a).  A plaintiff is denied full and equal access only when they personally encountered the violation on a specific occasion.  Cal. Civ. Code § 55.56(b).  A litigant need not prove any actual damages to recover statutory damages of $4,000.00.  Molski, 481 F.3d at 731.

If the District Judge finds sufficient allegations of discrimination under the ADA, a

1    violation of the ADA establishes a violation of the Unruh Act, and thus the Court finds that

2    Plaintiff would be entitled to statutory damages in the amount of $4,000.00.

3          3.      Attorneys' Fees and Costs

4          Plaintiff is requesting attorneys' fees in the amount of $3,730.00, and costs in the amount

5    of $552.00, for a total award of $4,282.00 in fees and costs.  (Mem. 2, 9; Decl. Russell Handy

6    Supp. Mot. Def. J. ("Handy Decl."), ECF Nos. 23-3 at 2-5, 25-2 at 2-5; Invoice, Ex. 1A, ECF No.

7    23-4 at 1-4.)  Pursuant to 42 U.S.C. § 12205, the party that prevails on a claim brought under the

8    ADA may recover "a reasonable attorney's fee, including litigation expenses," at the discretion of

9    the Court.   "[U]nder federal fee shifting statutes the lodestar approach is the guiding light in

10   determining a reasonable fee."  Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1176

11   (9th Cir. 2010) (internal punctuation and citations omitted).  The Ninth Circuit has explained the

12   lodestar approach as follows:

13             The lodestar/multiplier approach has two parts.  First a court determines the lodestar
               amount by multiplying the number of hours reasonably expended on the litigation by
14             a reasonable hourly rate.  The party seeking an award of fees must submit evidence
               supporting the hours worked and the rates claimed.  A district court should exclude
15             from the lodestar amount hours that are not reasonably expended because they are
               excessive, redundant, or otherwise unnecessary.  Second, a court may adjust the
16             lodestar upward or downward using a multiplier based on factors not subsumed in the
               initial calculation of the lodestar.  The lodestar amount is presumptively the
17             reasonable fee amount, and thus a multiplier may be used to adjust the lodestar
               amount upward or downward only in rare and exceptional cases, supported by both
18             specific evidence on the record and detailed findings by the lower courts that the
               lodestar amount is unreasonably low or unreasonably high.
19

20   Van Gerwin v. Guarantee Mut. Life Co., 214 F.3d 1041,1045 (9th Cir. 2000) (internal citations

21   and punctuation omitted).

22          Under the lodestar method, the court will first determine the appropriate hourly rate for the

23   work performed, and that amount is then multiplied by the number of hours properly expended in

24   performing the work.  Antoninetti, 643 F.3d at 1176.  The district court has the discretion to make

25   adjustments to the number of hours claimed or to the lodestar, but is required to provide a clear but

26   concise reason for the fee award.  Gates v. Deukmejian, 987 F.2d 1392, 1398 (9th Cir. 1992).  The

27   lodestar amount is to be determined based upon the prevailing market rate in the relevant

28   community.  Blum v. Stenson, 465 U.S. 886, 896 (1984).

### a.  Reasonable hourly rate

Counsel Candice Clipner ("Clipner") requests an hourly rate of $450 based on her experience practicing since 2001; and it appears Plaintiff is requesting $500 per hour for counsel Isabel Masanque ("Masanque"), who has been practicing since 2013.  (See Clipner Decl. ¶ 5; Price Decl. ¶ 4; Invoice, ECF No. 23-4 at 3.)  It appears Masanque only billed 0.2 hours.  It is not clear why Masanque's billing rate is higher than Clipner's despite Clipner having more experience.

The lodestar amount is to be determined based upon the prevailing market rate in the relevant community, Blum, 465 U.S. at 896 (1984), which in this matter is the Fresno Division of the Eastern District of California.  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum, 465 U.S. at 895 n.11.  Aside from describing counsel's experience, Plaintiff has not supplied evidence or caselaw regarding the reasonableness of the fees in this district in relation to their request. Thus, the Court relies on its own knowledge of customary legal local rates and experience with the legal market in setting a reasonable hourly rate.  Ingram v. Oroudjian, 647 F.3d 925, 926 (9th Cir. 2011).

In the context of cases alleging violations of the ADA, courts in this district have awarded fees ranging from $250.00 to $325.00 per hour within recent years.  See Cervantes v. Vargas, No. 117CV00923LJOSKO, 2018 WL 2455615, at *7 (E.D. Cal. June 1, 2018) (awarding $275.00 per hour to attorney with nine years of experience and representation in 275 ADA actions); Block v. Christian, No. 1:16–cv–00650–LJO–SKO, 2017 WL 5248402, at *4 (E.D. Cal. Nov. 13, 2017) (finding $325.00 per hour to be a reasonable hourly rate for an attorney with twenty-four years of experience in general litigation and twelve years working on ADA cases); Block v. Starbucks Corp., No. 115CV00991DADCKD, 2018 WL 4352906, at *7 (E.D. Cal. Sept. 11, 2018) (same); Arroyo v. J.S.T. LLC, No. 118CV01682DADSAB, 2019 WL 4877573, at *14 (E.D. Cal. Oct. 3, 2019), report and recommendation adopted, No. 118CV01682DADSAB, 2020 WL 32322 (E.D. Cal. Jan. 2, 2020); Trujillo v. Taco Riendo, 2022 WL 2236932, at *16 ($300 for over twenty years'

1  experience).

2       Accordingly, the Court recommends that Plaintiff receive $300.00 per hour for the services

3  of Clipner, and $275 per hour for the services of Masanque, based on their years of experience.

4  See Arroyo v. J.S.T., 2019 WL 4877573, at *14 (awarding $300 to attorneys with over twenty

5  years' experience, and $250 to those with less than ten years' experience, to attorneys at same law

6  firm as here).

7       The Court also recommends that Plaintiff receive the requested $100.00 per hour for the

8  services of the paralegals.  Durham v. FCA US LLC, No. 2:17-CV-00596-JLT, 2020 WL 243115,

9  at *9 (E.D. Cal. Jan. 16, 2020) ("Generally, paralegal rates within the Fresno Division of the

10  Eastern District range between $75 to approximately $150.00."); Tarango v. City of Bakersfield,

11  No. 1:16-CV-0099-JLT, 2017 WL 5564917, at *8 (E.D. Cal. Nov. 20, 2017) (same); AT&T

12  Mobility LLC v. Yeager, No. 2:13-CV-00007 KJM DB, 2018 WL 1567819, at *5 (E.D. Cal. Mar.

13  30, 2018) (reducing rate to $100 per hour, finding it to be "the reasonable hourly rate for paralegals

14  in this division.").

15       **b.    Reasonable number of hours**

16       The Court is familiar with work and billing practices of Plaintiff's and similar law firms

17  that use essentially fill-in-the-blank boilerplate forms for complaints and motions for default

18  judgment.  See Arroyo, 2019 WL 4877573; Trujillo, 2022 WL 2236932; Langer v. Pep Boys, Case

19  No. 4:20-CV-06015-DMR (N.D. Cal.) ; Langer v. Urban Plates, LLC, Case No. 4:20-cv-06015-

20  DMR (N.D. Cal.); Garcia v. A5 Hospitality, Case No. 2:20-cv-02164-KJM-KJN (E.D. Cal.).

21       The Court does not distinguish between the individual legal assistants' or paralegals'

22  entries, as they are fairly vague, and it appears, ten (10) different paralegal or assistants entered

23  time for only thirteen (13) different tasks, as follows: 0.20 hours for "Public record research"; 0.30

24  hours for drafting complaint; 0.40 hours for "Front matter docs"; 0.30 hours for "Moving Service";

25  0.30 hours for "MSC order mail served to the def."; 0.10 hours for "Updating PH-calendar"; 0.10

26  hours to prepare "answer or we will default letter; 0.20 hours filing the proof of service caption

27  page; 0.30 hours drafting the request for entry of default; 0.40 hours preparing proof of service and

28  caption letter for mailing standing order on defendant; 0.1 hours filing caption page; 2.0 hours

1    drafting the default judgment packet; and 0.10 hours for filing NOCA.  (ECF No. 23-4 at 2-3.)

2    Thus, the paralegals billed a total of 4.8 hours.

3          The Court does not find any excessive time billed for drafting the complaint, and indeed no

4    attorney time was spent on such task.  The Court finds 0.30 hours reasonable.  The Court

5    recommends cutting 1.0 of the 2.0 hours of paralegal time spent drafting the default judgment,

6    given the significant time billed by Clipner, and given the routine form of the filing and the

7    declaration materials.  As for the remainder of the tasks, the Court finds the entries vague,

8    excessive, duplicative, or consist entirely of or incorporate clerical tasks.  See Missouri v. Jenkins

9    by Agyei, 491 U.S. 274, 288 n.10 (1989) ("purely clerical or secretarial tasks should not be billed

10   at a paralegal rate, regardless of who performs them.").  Therefore, the Court would recommend

11   cutting an additional 50% of these collective tasks, or 1.9 hours.  Accordingly, the Court finds the

12   legal assistants/paralegal reasonably expended 1.9 hours in this matter.

13         It appears the only attorney time billed prior to entry of default was 0.1 hours by Masanque

14   reviewing the request for entry of default, and 0.1 hours reviewing and signing the consent form.

15   The Court finds these entries reasonable and finds Masanque has reasonably billed 0.2 hours.

16         Clipner billed 0.10 hours reviewing the notice of appearance; 0.5 hours preparing an OSC

17   response; 5.8 hours in relation to drafting the motion for default judgment; and an additional 0.6

18   hours communicating with the Plaintiff around the time of drafting the default judgment.  Thus,

19   Clipner billed a total of 7.0 hours in this matter between May 17, 2022, and May 20, 2022.  (ECF

20   No. 23-4 at 3.)  Despite Clipner not being counsel of record beforehand, the Court does not find

21   0.5 hours spent addressing an OSC to be reasonable, given it was Plaintiff's duty to prosecute this

22   action and left the case sitting idle.  (ECF No. 19.)  The Court recommends cutting those 0.5 hours.

23   Based on the substance of the actual unique information contained in the motion for default, and

24   the Court's familiarity with the forms and declarations used by this law firm and others, the Court

25   only finds 1.0 hours spent drafting the motion for default judgment to be reasonable.  The Court

26   finds 0.2 hours for the communications with Plaintiff around the time of default judgment to be

27   reasonable.  The Court finds Clipner reasonably billed 1.3 hours.

28         Accordingly, the Court finds that counsel Clipner reasonably expended 1.3 hours in this

action; counsel Masanque reasonably billed 0.2 hours; and the ten paralegals/legal assistants reasonably billed 1.9 hours.

**c.     Reasonable Attorneys' Fee Award**

The Court finds that: (1) Clipner reasonably expended 1.3 hours in this action at a reasonable rate of $300.00 per hour, for a total of $390.00; (2) Masanque reasonably expended 0.2 hours in this action at a reasonable rate of $275.00 per hour, for a total of $55.00; and the paralegals/legal assistants reasonable expended 1.9 hours in this litigation at a reasonable rate of $100.00 per hour, for a total of $190.00.

Accordingly, the Court recommends that Plaintiff be awarded attorneys' fees in the amount of $635.00, reduced from the requested amount of $3,730.00, if the District Judge is inclined to grant default judgment.

**d.     Costs**

Both the ADA and Unruh Act authorize the award of costs for an action.  See 42 U.S.C. § 12205; Cal. Civ. Code § 52(a).  Plaintiff seeks costs of $402.00 for filing fees, and $150.00 for service expenses.  The Court finds these expenses to be reasonable and recommends awarding Plaintiff a total of $552.00 in costs.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# V.

## RECOMMENDATION AND ORDER

The entry of default judgment is within the discretion of the Court. <u>See</u> <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980). As discussed above, the Court finds Plaintiff has not stated a sufficient claim for a violation of the ADA, <u>supra</u>, Section IV(B)(2)(a)(iii), and based on that finding, recommends the motion for default judgment be denied and Plaintiff be granted leave to file an amended complaint.

Alternatively, if the District Judge finds Plaintiff has stated a claim under the ADA and declines to adopt the Courts findings, <u>supra</u>, Section IV(B)(2)(a)(iii), the Court would then find the <u>Eitel</u> factors weigh in favor of granting default judgment, and would recommend granting the motion for default judgment with a reduction in attorneys' fees as outlined below.

Based upon the foregoing, the Court HEREBY RECOMMENDS that:

1. Plaintiff's motion for default judgment (ECF Nos. 23, 25) be DENIED;

2. Alternatively, if the District Judge finds Plaintiff has stated a claim under the ADA, the Court recommends Plaintiffs' motion for default judgment be GRANTED as follows:

   a. Plaintiff be AWARDED statutory damages in the amount of $4,000.00;

   b. Plaintiff be AWARDED reduced attorneys' fees in the amount of $635.00;

   c. Plaintiff be AWARDED costs in the amount of $552.00; and

   d. Plaintiff be GRANTED an injunction ordering Defendant to comply with the ADA by requiring all current and future audio-video content be closed captioned at the time of upload, on Defendant's Website.

These findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. §

636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Further, Plaintiff is HEREBY ORDERED to serve a copy of these findings and recommendations on Defendant within **three (3) days of entry**.

IT IS SO ORDERED.

Dated:   **July 27, 2022**

UNITED STATES MAGISTRATE JUDGE